1

2

3

4

5   IN THE UNITED STATES DISTRICT COURT FOR THE

6   EASTERN DISTRICT OF CALIFORNIA

7

8   MICHAEL J. McGINNIS,              )        No. CV-F-08-542 OWW
                                      )
9                                     )        MEMORANDUM DECISION AND
                                      )        ORDER GRANTING DEFENDANTS'
10              Plaintiff,            )        MOTION TO DISMISS IN PART
                                      )        WITH PREJUDICE AND IN PART
11         vs.                        )        WITH LEAVE TO AMEND (Doc.
                                      )        16) AND DIRECTING PLAINTIFF
12   COUNTY OF FRESNO, et al.,         )        TO FILE FIRST AMENDED
                                      )        COMPLAINT WITHIN 30 DAYS
13                                    )
                                      )
14              Defendants.           )
                                      )
15   _____)

16

17         On April 21, 2008, Michael J. McGinnis, a licensed attorney

18   proceeding *in pro per*, filed a Complaint for Damages pursuant to

19   42 U.S.C. § 1983.  Defendants are the County of Fresno, the

     Fresno County Sheriff's Department, and Fresno County Sheriff

20   Margaret Mimms, in her official and individual capacities, and

21   Does 1-50.

22         The Complaint alleges:

23              13.  Plaintiff is the attorney of record for
                the defendant Fernando Ponce Garcia in the
24              federal criminal case entitled *United States
                of America v. Fernando Ponce Garcia*, Case No.
25              06cr311 OWW.

26

1

14.   On or about April 9, 2008, plaintiff received a new and additional police report wherein it was reported that the co-defendant in the criminal action against Mr. Garcia had provided to a special agent for the Drug Enforcement Administration additional statements and information that further implicated plaintiff's client in the crime charged.

15.   On that same day in response to receipt of the new and additional information contained in the report, plaintiff herein attempted to visit, interview, discuss and consult with his client, Mr. Garcia, at the Fresno County Jail in which Mr. Garcia was being held on the sixth floor.

16.   Seeking to maintain privacy and confidentiality of the attorney-client consultation, the plaintiff requested from a Fresno County Deputy Sheriff Correctional Officer an interview room not subject to monitoring to conduct the interview. Plaintiff and his client were allowed to begin the interview in an interview room on the fifth floor of the Fresno County Jail which was unmonitored with no intercom or video camera.

17.   After six (6) or seven (7) minutes of discussion between the plaintiff and his client in the unmonitored fifth floor interview room, a Fresno County Sheriff Sergeant correctional officer terminated the interview and required that the interview be continued in the sixth floor interview room subject to being monitored.  Because the defendants, and each of them, refuse, and continue to refuse, to provide plaintiff and his client an unmonitored and private interview room in which to consult, the plaintiff has not consulted and discussed the case with his client thereby depriving Mr. Garcia the effective assistance of his attorney, the plaintiff.

18.   The actions of the defendants, and each of them, violates the plaintiff's client's right to counsel by inhibiting the full and free communication necessary between his

2

client, who was charged with a commission of
a crime, and plaintiff, his counsel, in
violation of the Sixth Amendment to the
United States Constitution.

19.   The actions of the defendants, and each
of them, violates [sic] the right of the
plaintiff to practice his profession, a
protected interest, according to the highest
standards, in violation of the Fourteenth
Amendment to the United States Constitution.

20.   The actions of the defendants, and each
of them, violates [sic] the right of the
plaintiff to free speech, a protected
interest, in violation of the First Amendment
to the United States Constitution.

21.   The acts of defendants described above
were all performed with malice and
premeditation under color of state law with
willful and wanton disregard of plaintiff's
rights under the First, Sixth, and Fourteenth
Amendments of the Constitution and in
contravention of the letter and spirit of 42
U.S.C. § 1983.

22.   As a result of these acts, plaintiff has
suffered great mental pain and suffering,
monetary loss, deprivation of his right to
freely and privately speak with his client,
and loss of his ability to work and function
as a member of his profession and family.

The Complaint seeks compensatory and punitive damages.   The

Complaint seeks a preliminary and permanent injunction

"prohibiting defendants from continuing to maintain practices and

policies that allow monitoring and eavesdropping on attorney-

client consultations in the Fresno County Jail through the use of

intercoms, video cameras and any other recording or listening

device."   The Complaint seeks a declaration that "defendants

have engaged in a past and continuing pattern and practice of

monitoring and eavesdropping on attorney-client consultations in

3

the Fresno County Jail through the use of intercoms, video cameras and other recording or listening devices.[1]

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

In his opposition to the motion, Plaintiff concedes that the Complaint fails to allege sufficient facts that Sheriff Mimms either participated in the alleged violations or knew about the alleged violations and did nothing to correct them, and seeks leave to amend to allege facts upon which relief against Sheriff Mimms in her individual capacity may be alleged.

Defendants' motion to dismiss the Complaint against Sheriff Mimms in her individual capacity is GRANTED WITH LEAVE TO AMEND.

Plaintiff also requests that the Complaint against Sheriff Mimms in her official capacity and against the Fresno County Sheriff's Department be dismissed without prejudice.  Plaintiff concedes that he has failed to allege facts to state a claim for violation of the Sixth Amendment and requests that this claim be dismissed without prejudice.

Defendants' motion to dismiss the Complaint against Sheriff Mimms in her official capacity and against the Fresno County Sheriff's Department is GRANTED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

---

[1]The Complaint also seeks reasonable attorney's fees and costs.  Because Plaintiff is proceeding *in pro per*, he is not entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988.  *Kay v. Ehrler*, 499 U.S. 432 (1991).

A.  <u>GOVERNING STANDARDS</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'"  *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic*, *id.* at 1964-1965.  Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from

them in the light most favorable to the nonmoving party.
*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,
legal conclusions need not be taken as true merely because they
are cast in the form of factual allegations.   *Ileto v. Glock,
Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).

Immunities and other affirmative defenses may be upheld on a
motion to dismiss only when they are established on the face of
the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th
Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th
Cir. 1980)  When ruling on a motion to dismiss, the court may
consider the facts alleged in the complaint, documents attached
to the complaint, documents relied upon but not attached to the
complaint when authenticity is not contested, and matters of
which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146
F.3d 699, 705-706 (9th Cir.1988).

B.   <u>STANDING</u>

Defendants argue that Plaintiff lacks standing to assert the
alleged violation of the constitutional rights of his client, Mr.
Garcia.

In order to satisfy Article III's standing requirements, a
plaintiff must show (1) he has suffered an "injury in fact" that
is (a) concrete and particularized and (b) actual or imminent,
not conjectural or hypothetical; (2) the injury is fairly
traceable to the challenged action of the defendants; and (3) it
is likely, as opposed to merely speculative, that the injury will
be redressed by a favorable decision.  *Lujan v. Defenders of*

1  *Wildlife*, 504 U.S. 555, 560-561 (1992).

2      In opposing this aspect of the motion to dismiss, Plaintiff

3  relies solely on the allegations of the Complaint in which he

4  alleges that his First and Fourteenth Amendment rights were

5  violated by Defendants' alleged actions.  Plaintiff does not

6  explain how the allegations of Paragraph 18, which appear to

7  pertain solely to the Sixth Amendment rights of Mr. Garcia,

8  implicate the Sixth Amendment rights of Plaintiff.  Because

9  Plaintiff concedes dismissal of the claim for violation of the

10 Sixth Amendment, Plaintiff concedes that he lacks standing to

11 advance any claims of his client, Mr. Garcia.

12      At the hearing, Plaintiff stated that he could amend the

13 Complaint to include his client, Mr. Garcia, as a plaintiff in

14 this action.

15      Defendants' motion to dismiss for lack of standing is

16 **GRANTED WITH LEAVE TO AMEND** to the extent that the Complaint

17 purports to allege claims on behalf of Mr. Garcia.

18      C.   *Monell.*

19      The County of Fresno moves to dismiss the Complaint on the

20 ground that it does not allege that any of the constitutional

21 violations were caused by a policy or custom of the County of

22 Fresno.

23      *Monell v. New York City Dept. of Social Services*, 436 U.S.

24 658 (1978) authorizes direct suits against local government units

25 under Section 1983 where "the action that is alleged to be

26 unconstitutional implements or executes a policy statement,

7

ordinance, regulation, or decision officially adopted and
promulgated by that body's officers."  436 at 690-691.
"Moreover, ... local governments ... may be sued for
constitutional deprivations visited pursuant to governmental
'custom' even though such a custom has not received formal
approval through the body's official decisionmaking channels."
*Id.*  Since "Congress did not intend municipalities to be held
liable unless action pursuant to official municipal policy of
some nature caused a constitutional tort[,] ... a municipality
cannot be held liable solely because it employs a tortfesor - or,
in other words, a municipality cannot be held liable under § 1983
on a respondeat superior theory."  *Id.* at 691.  A municipality
will be liable under Section 1983 only if "the municipality
itself causes the constitutional violation at issue."  *Canton v.
Harris*, 489 U.S. 378, 385 (1989).  In order to assert a *Monell*
claim, plaintiff must establish: (1) a violation of
constitutional rights occurred; (2) the existence of a municipal
policy or custom; and (3) a causal nexus between (1) and (2).
*Canton, id.* at 385-386; *see also City of Los Angeles v. Heller*,
475 U.S. 796, 799 (1986)("If a person has suffered no
constitutional injury at the hands of the individual police
officer, the fact that the departmental regulations might have
authorized the use of constitutionally excessive force is quite
beside the point.").

Plaintiff opposes the motion to dismiss, citing *Fairley v.
Luman*, 281 F.3d 913 (9th Cir.2002), and *Gibson v. County of*

*Washoe, Nev.*, 290 F.3d 1175 (9th Cir.2002), *cert. denied*, 537 U.S. 1106 (2003).

In *Fairley*, the Ninth Circuit held:

> A 'policy' is '"a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."' ... A 'policy' can be one of action ... or inaction ....

281 F.3d at 918.   In *Gibson*, the Ninth Circuit explained that there are two routes to imposition of municipal liability under Section 1983.   Relying on *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the Ninth Circuit stated:

> Under the second route to municipal liability, a plaintiff need not allege that the municipality itself violated someone's constitutional rights or directed one of its employees to do so.   Instead, a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. *Canton*, 489 U.S. at 387-89 ... However, because *Monell* held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation.   *Id.* at 387 ... To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation.   *Farmer v. Brennan*, 511 U.S. 825, 841 ... (1994) ....

9

1                      ...

2              To impose liability against the County under
               *Canton*, a plaintiff must show: (1) that a
3              County employee violated Gibson's rights; (2)
               that the County has customs or policies that
4              amount to deliberate indifference (as that
               phrase is defined by *Canton*); and (3) that
5              these policies were the moving force behind
               the employee's violation of Gibson's
6              constitutional rights, in the sense that the
               County could have prevented the violation
7              with an appropriate policy.

8    290 F.3d at 1186, 1193-1194.

9         Plaintiff argues that "a logical inference" arises from the

10   allegations of the Complaint that it was the policy of the County

11   to monitor Plaintiff's conversations with his client:

12             Whether the actions of the correctional
               officer in returning plaintiff and his inmate
13             client to the monitored interview room, as
               alleged, was an affirmative act of denying
14             the plaintiff of his 1st and 14th Amendment
               rights or merely an act of deliberate
15             indifference is unclear.

16   Nonetheless, Plaintiff argues, the Complaint alleges facts

17   sufficient to meet the pleading requirement under either the

18   deliberate choice standard or the deliberate indifference

19   standard.

20        Defendants reply that the allegations upon which Plaintiff

21   relies to allege *Monell* liability are insufficient to state a

22   claim.  Defendants cite *City of Oklahoma City v. Tuttle*, 471 U.S.

23   808, 823-824 (1985):

24             Proof of a single incident of
               unconstitutional activity is not sufficient
25             to impose liability under *Monell*, unless
               proof of the incident includes proof that it
26             was caused by an existing, unconstitutional

                              10

> municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.  But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.

Defendants also cite *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996):

> Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out the policy.

The cases relied upon by Defendants involved review of summary judgment or trial.  It is well established in the Ninth Circuit that an allegation based on nothing more than a bare averment that the official's conduct conformed to official policy, custom or practice suffices to state a *Monell* claim under Section 1983.  *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

However, the Complaint does not include any *Monell* allegations as required by the Ninth Circuit.  The motion to dismiss on this ground is GRANTED WITH LEAVE TO AMEND.

D.   <u>FOURTEENTH AMENDMENT</u>.

11

Defendants move to dismiss Plaintiff's claim that the alleged action violated "the right of the plaintiff to practice his profession, a protected interest, according to the highest standards, in violation of the Fourteenth Amendment to the United States Constitution."

Plaintiff argues that the allegations of the Complaint suffice to show that Plaintiff maintained a liberty interest in seeking to pursue his profession, which was interfered with by the actions of Defendants.

"The concept of 'substantive due process,' ... forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998), quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987).

Relevant to the resolution of the motion to dismiss is *Conn v. Garbert*, 526 U.S. 286 (1999).  In *Conn*, Conn and Najera, prosecutors in the Menendez brothers' case on retrial, learned that Lyle Menendez had written a letter to Traci Baker, in which he may have instructed her to testify at the first trial.  Baker was subpoenaed to testify before a grand jury and to produce any correspondence that she had received from Menendez.  Baker later responded that she had given Menendez's letters to her attorney, Gabbert.  When Baker appeared to testify before the grand jury, accompanied by Gabbert, Conn directed police to secure a search warrant to search Gabbert for the letter.  At the same time that

Gabbert was being searched, Najera called Baker before the grand jury for questioning.  Gabbert brought suit against Conn and Najera under Section 1983, contending, *inter alia*, that his Fourteenth Amendment right to practice his profession without unreasonable government interference was violated when the prosecutors executed a search warrant at the same time his client was testifying before the grand jury.  The District Court granted summary judgment on the Fourteenth Amendment claims.  The Ninth Circuit ruled that Gabbert had a right to practice his profession without undue and unreasonable government interference, and that because the right was clearly established, the prosecutors were not entitled to qualified immunity.

The Supreme Court reversed:

> We find no support in our cases for the conclusion of the Court of Appeals that Gabbert had a Fourteenth Amendment right which was violated in this case.  The Court of Appeals relied primarily on *Board of Regents v. Roth*.  In *Roth*, this Court repeated the pronouncement in *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), that the liberty guaranteed by the Fourteenth Amendment '"denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men."' *Roth*, *supra*, at 572 ... But neither *Roth* nor *Meyer* even came close to identifying the asserted 'right' violated by the prosecutors in this case.  *Meyer* held that substantive due process forebade a State from enacting a statute that prohibited teaching

13

in any language other than English.  262 U.S. at 399, 402-403.  And *Roth* was a *procedural* due process case which held that an at-will college professor had no 'property' interest in his job within the meaning of the Fourteenth Amendment so as to require the university to hold a hearing before terminating him.  408 U.S. at 578.  Neither case will bear the weight placed upon it by the Court of Appeals or Gabbert: Neither case supports the conclusion that the actions of the prosecutors in this case deprived Gabbert of a liberty interest in practicing law.

Similarly, none of the other cases relied upon by the Court of Appeals or suggested by Gabbert provide any more than scant metaphysical support for the idea that the use of a search warrant by government actors violates an attorney's right to practice his profession.  In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation.  *See, e.g., Dent v. West Virginia*, 129 U.S. 114 (1889) (upholding a requirement of licensing before a person can practice medicine); *Truax v. Raich*, 239 U.S. 33, 41 (1915) (invalidating on equal protection grounds a state law requiring companies to employ 80% United States citizens).  These cases all deal with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption which occurred here.

Gabbert also relies on *Schware v. Board of Bar Examiners of N.M.,* 353 U.S. 232, 238-239 (1957), for the proposition that a State cannot exclude a person from the practice of law for reasons that contravene the Due Process Clause.  *Schware* held that former membership in the Communist Party and an arrest record relating to union activities could not be the basis for completely excluding a person from the practice of law.  Like *Dent, supra,* and *Truax, supra,* it does not deal with a brief interruption as a

14

result of legal process.  No case of this
Court has held that such an intrusion can
rise to the level of a violation of the
Fourteenth Amendment's liberty right to
choose and follow one's calling.  That right
is simply not infringed by the inevitable
interruptions of our daily routine as a
result of legal process, which all of us may
experience from time to time.

Gabbert next argues that the improper timing
of the search interfered with his client's
right to have him outside the grand jury room
and available to consult with her. A grand
jury witness has no constitutional right to
have her counsel present during the grand
jury proceeding ..., and no decision of this
Court has held that a grand jury witness has
a right to have her attorney present outside
the jury room.  We need not decide today
whether such a right exists, because Gabbert
clearly had no standing to raise the alleged
infringement of the rights of his client
Tracy Baker.  '[T]he plaintiff generally must
assert his own legal rights and interests,
and cannot rest his claim to relief on the
legal rights or interests of third parties.'
*Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Gabbert of course does have standing to
complain of the allegedly unreasonable timing
of the execution of the search warrant to
prevent him from advising his client.  In
essence then, he argues that the prosecutors
searched him in an unreasonable manner.  We
have held that where another provision of the
Constitution 'provides an explicit textual
source of constitutional protection,' a court
must assess a plaintiff's claims under that
explicit provision and 'not the more
generalized notice of "substantive due
process."' ...

**526 U.S. at 291-293;** *see also* Justice Stevens' concurring

opinion:

Respondent claims that petitioners violated
his constitutional right to practice his
profession by unreasonably timing the service
and execution of a warrant to search his

15

1
2
3
4

       **papers.  There is, however, no evidence that
respondent's income, reputation, clientele,
or professional qualifications were adversely
affected by the search.  Nor is there any
real evidence or allegation that respondent's
client was substantially prejudiced by what
occurred.**

5 *Id.* **at 293.**

6       **Relying on** *Conn***, Defendants argue that "Plaintiff's**
7 **livelihood has only been affected incidentally, as he has only**
8 **alleged a difficulty in communicating with one particular client"**
9 **and that the allegations of the Complaint "fall far short of the**
10 **requirement of a permanent interference with one's ability to**
11 **pursue a career in a particular industry."**

12       **At the hearing, Plaintiff admitted that the alleged actions**
13 **of the Defendants did not eliminate his ability to practice law.**
14 **Plaintiff asserted his concern that, if he is contacted by a**
15 **prospective client housed on the 6ᵗʰ floor of the Fresno County**
16 **Jail, he will be precluded from interviewing that prospective**
17 **client free from intercom monitoring by jail personnel.**
18 **Plaintiff stated that there is no control for the intercom inside**
19 **the interview room and that the intercom controls are located**
20 **elsewhere in the jail.**

21       **Plaintiff further opposes the motion to dismiss by**
22 **contending that "it 'shocks the conscience' that the plaintiff**
23 **attorney as well as his clients [sic] were not afforded privacy**
24 **and confidentiality to consult in the client's defense from the**
25 **government agents who seek to convict plaintiff's client."**
26 **Plaintiff asserts:**

16

> It flies in the face of fairness, due
> process, and '... the rights implicit in the
> concept of ordered liberty.'  The facts
> alleged are sufficiently [sic] to nudge his
> claim from 'conceivable' to 'plausible.'

Plaintiff's client is being prosecuted by the United States, not the County of Fresno.  Further, Plaintiff's contention pertains to the rights of his *client*, not Plaintiff's rights.

Defendants, referring to the allegation that Plaintiff was deprived of his right to function as a member of his family, move to dismiss this claim.

There is a constitutional interest in familial companionship and society.  *See Smith v. City of Fontana*, 818 F.2d 1411, 1417-1418 (9th Cir.1987).  However, it cannot be inferred that the alleged act of the correctional officer in moving Plaintiff and his client from an unmonitored interview room to a monitored interview room even remotely states a claim for unconstitutional interference with Plaintiff's right to familial association. This claim is not explained nor are any facts alleged beyond a legal conclusion to justify a familial association claim.

Defendants' motion to dismiss Plaintiff's claim for violation of the Fourteenth Amendment is GRANTED WITH LEAVE TO AMEND.

E.   <u>FIRST AMENDMENT</u>.

Defendants move to dismiss Plaintiff's claim that his First Amendment right was violated.  Defendants assert that they are unaware of any authority extending First Amendment protection to an attorney who desires to consult with an incarcerated client

17

without being monitored.

Plaintiff cites *Perry v. Sinderman*, 408 U.S. 593, 597 (1972):

> The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. We hold that it does not.
>
> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of these freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which (it) could not command directly." ... Such interference with constitutional rights is impermissible.

Plaintiff argues that the allegations of the Complaint demonstrate that, "because plaintiff was denied an interview room not subject to monitoring, the plaintiff was denied his right to speak freely with his client in violation of the First Amendment." Plaintiff acknowledges that he cannot cite a case that extends First Amendment protection to an attorney who desires to consult with an inmate client without being monitored. Nor does Plaintiff refer to any legal authority that a stand-alone damages claim exists under the First Amendment. However,

18

Plaintiff cites *Steinke v. Washington County*, 857 F.Supp. 55 (D.Or.1995).

In *Steinke*, criminal defense attorneys who represented persons confined in a county jail, brought an action for injunctive relief and class certification against the county for the county's failure to provide them with adequate and private space for consultation with their clients, alleging, *inter alia*, that the county's failure to provide the requested space violated their rights to practice their profession according to the highest standards in violation of the Fourteenth Amendment and violated their First Amendment rights to free speech.  A motion to dismiss was denied.

However, the opinion addressed only the Sixth Amendment; there is no discussion of the Fourteenth or First Amendments in the decision.  Because Plaintiff has conceded dismissal of the claim based on the Sixth Amendment, *Steinke* is not valid authority for Plaintiff's claim based on the First Amendment.

In their reply brief, Defendants cite *Ching v. Lewis*, 895 F.2d 608, 609-610 (9th Cir.1990): "A prisoner's [Fourteenth Amendment] right of access to the courts includes contact visitation with his counsel."   Defendants also cite *DePaoli v. Carlton*, 678 F.Supp. 1351 (E.D.Cal.1995).

In *DePaoli*, an attorney, DePaoli, brought a Section 1983 action against county officials for allegedly violating his First Amendment right to petition the court for redress of grievances. DePaoli alleged that county officials, along with a third party,

engaged in a series of actions designed to disrupt the attorney-client relationship between DePaoli and criminal defendant Kellotat, and ultimately to prevent DePaoli from defending Kellotat.  DePaoli alleged that Kellotat, arrested and charged with murder, retained DePaoli has defense counsel.  Although the murder charges were dropped, Kellotat remained in custody on an unrelated matter.  County authorities were contacted by third party, Bradley, who offered information implicating Kellotat in the murder in exchange for early release from prison.  On the basis of Bradley's statements, Kellotat was again arrested and charged with murder.  Kellotat again retained DePaoli as defense counsel.  While DePaoli was finalizing financial arrangements with Kellotat's family, county officials met with Kellotat's relatives and unsuccessfully attempted to convince them not to hire DePaoli.  Bradley then contacted DePaoli, attempting to make a deal for testimony more favorable to Kellotat.  When Bradley's attempts were unsuccessful, Bradley approached county officials and informed them that he could get DePaoli to bribe him on tape. County officials then recorded seven phone calls and one jail visit between DePaoli and Bradley.  County officials coached Bradley to say that he had lied to the prosecutors and that he was willing to testify truthfully on Kellotat's behalf in exchange for money or other assistance for himself and his girlfriend.  Money was sent to the girlfriend by Carl Smith, a man who did not have a connection to DePaoli.  When DePaoli arrived for an appearance in the Kellotat case, he was met by

1   county officials, who told him that his conversations with

2   Bradley had been recorded and that no charges would be filed

3   against DePaoli if he withdrew as Kellotat's counsel.   DePaoli

4   asked the court for permission to withdraw, but later informed

5   the court that Kellotat still wanted DePaoli to be his defense

6   attorney.   Soon after, DePaoli was informed that bribery charges

7   would be filed against him.   DePaoli was reinstated as Kellotat's

8   defense attorney by court order and bribery charges were filed

9   against DePaoli on the same day.   The District Attorney continued

10  to oppose DePaoli's representation of Kellotat.   When DePaoli

11  sought to be certified as counsel for the now indigent Kellotat,

12  the District Attorney opposed the request, with the ultimate

13  result being that DePaoli was permitted to represent Kellotat,

14  but was not paid.   After a jury trial, Kellotat was found not

15  guilty of all charges.   Judge Shubb ruled:

16              Plaintiff's argument that defendants' conduct
                amounted to a deprivation of his First
17              Amendment right to petition the court for
                redress of grievances is groundless.   The
18              right to petition the government for redress
                of grievances is personal.   In the context of
19              a court proceeding the right to petition is
                the client's, not the attorney's.   An
20              attorney may not claim a right to petition
                based upon representation of a client ... If
21              any First Amendment right was impinged in
                this case, it was Kellotat's, not DePaoli's.

22  878 F.Supp. at 1355.[2]

23

_____

24      [2]*See also Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th
    Cir.1985), *cert. denied*, 475 U.S. 1088 (1986):
25
26              Standing alone, the attorney-client privilege
                is merely a rule of evidence; it has not yet

21

1    The Court's independent research could find no cases

2  supporting Plaintiff's First Amendment claim.

3    Defendants' motion to dismiss Plaintiff's claim for

4  violation of the First Amendment is GRANTED WITH LEAVE TO AMEND.

5    For the reasons stated:

6    1.   Defendants' motion to dismiss the Complaint against

7  Sheriff Mimms in her official capacity and against the Fresno

8  County Sheriffs Department is GRANTED WITH PREJUDICE AND WITHOUT

9  LEAVE TO AMEND; Defendants' motion to dismiss the Complaint for

10  lack of standing and failure to state claim upon which relief can

11  be granted is GRANTED WITH LEAVE TO AMEND.

12    2.   If Plaintiff elects to so so, any First Amended

13  Complaint shall be filed within 30 days following of the filing

14  date of this Memorandum Decision and Order, in accordance with

15  this decision.

16    IT IS SO ORDERED.

17  Dated:   September 19, 2008            /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

18

19

20

21

22
   _____

23            been held a constitutional right ... In some
             situations, however, government interference
24           with the confidential relationship between a
             defendant and his counsel may implicate Sixth
25           Amendment   rights   ...   Such   an   intrusion
             violates   the   Sixth   Amendment   only   when   it
26           substantially prejudices the defendant ....